# Fealy *v.* City of Birmingham.

### Practicing Medicine Without License.

(Decided September 19, 1916. Rehearing denied October 14, 1916.
73 South. 296.)

1. **Appeal and Error; Review; Insistence.**—Although errors are assigned they will be treated as waived, if not noticed or insisted upon in brief or argument.

2. **Same; Orders Reviewable.**—It is within the irrevisable discretion of the trial court whether it will put the defendant to his demurrer or plea in abatement on an indictment or complaint, and hence, errors cannot be predicated upon the refusal of the court to quash an indictment.

3. **Physicians and Surgeons; Practicing; Complaint.**—A complaint charging that defendant treated or offered to treat a human being of and for gall stones, organic heart trouble, or other diseases of human beings, without first having obtained a certificate of qualification from the State Board of Medical Examiners, was sufficient.

4. **Constitutional Law; Religious Liberty.**—The complaint in this case is not objectionable as being violative of the Constitution of the United States and the State of Alabama, in denying defendant the right to practice his religion.

5. **Physician and Surgeon; Practice; Complaint.**—The complaint in this case was sufficient to advise defendant of the specific charges against him.

[Fealy v. City of Birmingham.]

6. **Indictment and Information; Alternative Allegation.**—The complaint in this case, although charging in the alternative that defendant treated or offered to treat a human being, was not objectionable as failing to advise as to which averment the defendant was being tried on.

7. **Physician and Surgeon; Practice; Complaint.**—The complaint in this case is not objectionable for failing to show the system of treatment used, or offered to be used.

8. **Indictment and Information; Unlawful Practice; Complaint.**—Under § 7564, Code 1907, and an ordinance omnibus provision, making all misdemeanors under state laws offenses against the city, a complaint alleging that defendant treated a human being or offered to treat a human being of and for certain diseases, without having first obtained a certificate of qualification from the State Board of Medical Examiners, was sufficient, since it charged in the statutory language.

9. **Criminal Law; Trial; Complaint.**—Construing §§ 1451, 6730, and 6744, Code 1907, it is held that on appeal from a recorder's court, a complaint signed by the solicitor is sufficient, although the record does not disclose the affidavit made before the recorder.

10. **Physicians and Surgeons; Regulation.**—The regulation of the practice of medicine is a valid exercise of the police power.

11. **Same; Pleading.**—Any error in sustaining demurrers to special pleas that defendant in treating such person was practicing his religious faith, was harmless, as such defense was equally available under the plea of not guilty.

12. **Same; Regulations.**—The regulation of the practice of medicine being a police regulation to protect the public, and not interfering with the exercise of religious liberty, it is no defense to a prosecution for a violation of the regulation against practicing medicine without license that in so doing defendant was practicing his religious belief, if in fact defendant treated disease.

13. **Same.**—Under § 7564, Code 1907, any agency of supposed therapeutic value set in motion designed to cure, prevent or alleviate human diseases, and bodily or mental suffering by one who receives compensation for such service, is within the terms of the statute, and it is not necessary that drugs or surgical or mechanical appliances be applied, although if recourse is had merely to prayer without material or human agencies, and without charge, the acts do not constitute practicing medicine.

14. **Same.**—Under § 7564, Code 1907, the prosecution cannot be defeated by showing that the fee received was received in behalf of an incorporated church, and only came to the alleged practitioner indirectly.

15. **Same.**—Where the defense was that the moneys received were on behalf of an incorporated church, the articles of incorporation of the church, and its by-laws were not admissible, since this would constitute no defense.

16. **Charge of Court; Defect in Form.**—Charges must be given or refused in the terms in which they are written, and when elliptical, may be refused without error.

17. **Same; Reasonable Doubt.**—A charge asserting that the absence of sufficient and satisfactory evidence may afford grounds for reasonable doubt is proper, and should have been given.

[Fealy v. City of Birmingham.]

18. **Courts; Stare Decisis.**—Where the Supreme Court approved a charge in a certain case, and that charge is applicable to the issues in another case in which it is requested, the Court of Appeals cannot criticize or deny the correctness of such charge.

19. **Charge of Court; Reasonable Doubt.**—A charge asserting that although there may not be a probability of innocence, a reasonable doubt may exist which would entitle defendant to an acquittal, is a proper charge.

20. **Same; Singling Out Evidence.**—Charges which single out and give undue prominence to particular phases of the evidence, may be refused without error.

21. **Same; Submitting Law Question.**—Charges which submit to the jury questions of law, in this case, as to what constitutes practicing medicine, are refused without error.

22. **Same; Ignoring Issues.**—Charges which ignore issues presented by the pleading or the evidence are properly refused.

APPEAL from Jefferson Circuit Court.

Heard before Hon. E. C. CROW.

L. A. Fealy was convicted of practicing medicine without a license, contrary to an ordinance of the city of Birmingham, and he appeals. Reversed and remanded.

The complaint charged that L. A. Fealy, within 60 days before the arrest in this case, and before the commencement of this prosecution, and within the city of Birmingham, did treat or offer to treat N. R. Keeling, a human being, of and for gallstones, organic heart trouble, or other diseases of human beings, without having first obtained a certificate of qualification from the state board of medical examiners, against the laws and ordinances of the city of Birmingham. The demurrers raise the question that the law or ordinance which the defendant is charged with violating is unconstitutional and void as in contravention of the Bill of Rights of the Constitution of the state of Alabama, and of the Constitution of the United States; that it is insufficient to advise defendant of what he is charged with, and what offense he is to defend against; the complaint charges in the alternative that defendant did treat or offer to treat a human being, and defendant is not advised as to which averment he is to stand trial for; the complaint fails to set out or show the system of treatment used or offered to be used by defendant on said Keeling. The pleas were as follows:

(2) Defendant says he is not guilty of the charge filed against him in this cause, in this: That in the treatment of said Keeling as alleged in this complaint this defendant was practicing and

[Fealy v. City of Birmingham.]

putting in effect his religious faith and doctrine as set forth and promulgated by the Altruian Church, of which this defendant is a bishop, and a preacher, and which he has a right to do as guaranteed to him by virtue of the declaration of rights, article 1,. Constitution, state of Alabama.

(3) This defendant was exercising his religion as embraced in the teachings of the Altruian Church, or religious society, of which defendant was a bishop or preacher, and to enforce the law or ordinance as is sought to be done in this case, is violative of article 1 of the amendments to the Constitution of the United States, and section 1, art. 14, of amendments of Constitution of United States.

The following charges were refused to defendant:

(38) If there is a reasonable probability of defendant's innocence, then this is a just foundation for a reasonable doubt, and authorizes an acquittal.

(39) The absence of sufficient satisfactory evidence before the jury may afford grounds for reasonable doubt of defendant's guilt.

(43) Although there may not be a probability of innocence, a reasonable doubt may exist which would entitle defendant to an acquittal.

(44) If the jury find from the evidence that the treatment which defendant gave to witness Keeling was only to put his hand on his head and over his heart, and prescribe periods of prayer and rest, and that this was practicing by defendant of his religion as taught by the Altrurian Church, they must find for defendant.

(45) If the jury believe from the evidence that the defendant in treating said Keeling was practicing his religion in good faith and not practicing any system of medicine, they cannot find the defendant guilty.

(46) Practically same as 45.

(47) If the jury believe from the evidence that defendant in treating said Keeling, it matters not if the jury considers what he did to be without merit, was practicing his religion as taught by the Altruian Church, and that he was a member or bishop of that church, they must find defendant not guilty.

OSCAR R. HUNDLEY, and F. E. BLACKBURN, for appellant. ROMAINE BOYD, M. M. ULLMAN, and W. A. JENKINS, for appellee.

[Fealy v. City of Birmingham.]

EVANS, J.—This appeal is prosecuted from a judgment convicting appellant of practicing medicine without having first obtained a certificate from the state board of medical examiners, contrary to an ordinance of appellee.

(1) Numerous errors are assigned upon the record; but a number of them are not noticed in the brief of appellant. Such assignments as counsel ignore, we treat as having been waived and pretermit discussion thereof.—*Johnson's Case,* 152 Ala. 93, 44 South. 671; *Rosenau v. Powell,* 184 Ala. 396, 63 South. 1020.

(2-7) Error cannot be predicated upon the refusal of the trial court to quash an indictment or complaint, as it is within the irrevisable discretion of the court whether it will put defendant to his demurrer or plea in abatement, as the case may be.— *Josiah Clark's Case,* 14 Ala. App. 633, 71 South. 291; *Johnson's Case,* 134 Ala. 54, 32 South. 724. The appellant had the benefit, however, of the same questions on demurrer that were urged on the motion to quash. We are of opinion that the complaint set forth an offense sufficiently pleaded, and is not subject to the infirmities claimed in the demurrers.

(8) By a blanket, or omnibus, provision of Ordinance No. 181, city of Birmingham, all misdemeanors against the laws of the state are also made offenses against that city. This same ordinance (No. 181) was upheld in *Sloss-Sheffield Steel & Iron Co. v. Smith,* 175 Ala. 260, 57 South. 29. The statute against practicing medicine without having obtained a certificate from the state board of medical examiners is to be found in Code, § 7564, which makes it a misdemeanor for any person, without such certificate, "to treat or offer to treat diseases of human beings by any system of treatment whatsoever." The charge here (omitting time and venue) is that appellant "did treat or offer to treat N. R. Keeling, a human being, of and for gallstones, organic heart trouble, or other diseases of human beings without having first obtained a certificate of qualification from the state board of medical examiners, against the laws and ordinances of the city of Birmingham." It has been frequently held that in charging a statutory offense, the offense is sufficiently pleaded if set forth in the language of its creation.—*Mason and Franklin's Case,* 42 Ala. 543; *Yancy's Case,* 63 Ala. 141; *Trayler's Case,* 100 Ala. 142, 14 South. 634; *Johnson's Case,* 152 Ala. 46, 44 South. 670; *Kimbell's Case,* 165 Ala. 118, 51 South. 16.

(9) It is objected that the complaint was not sworn to. The record does not disclose the affidavit before the recorder of the city of Birmingham; but the complaint filed in the circuit court. The procedure in misdemeanor appeals from county courts or justices of the peace (and appeals from recorders' courts, in the absence of special provision, fall within the latter classification) is that the case is tried de novo, at which "a brief statement of the cause of complaint" signed by the solicitor shall be filed. See the following sections of the Code, in the order named: 1451, 6744, 6730. The design and purpose of such complaint is to definitely apprise the defendant of the nature and cause of the accusation, and it is not intended that it should be verified. The procedure presupposes a valid affidavit in the recorder's court; at least it was the right of the defendant to demand a verified complaint in that forum, and his failure in that behalf has been construed as a waiver, and that the objection came too late upon the trial in the circuit court.—Vide Aderhold v. Anniston, 99 Ala. 521, 12 South. 472; McKinstry v. Tuscaloosa, 172 Ala. 344, 54 South. 629; Turner v. Lineville, 2 Ala. App. 454, 56 South. 603.

(10) We are not impressed with the demurrers challenging the constitutionality of the ordinance; the regulation of the practice of medicine is a valid exercise of the police power.—30 Cyc. 1547 (A), 8 Cyc. 900 (i); Brook's Case, 88 Ala. 122, 6 South. 902; Bell's Case, 104 Ala. 79, 15 South. 557.

(11-13) It is insisted that the trial court erred in sustaining demurrers to defendant's special pleas numbered second and third. (The reporter will set the pleas out.) The matter raised by these special pleas was equally available under the plea of not guilty; and, even assumnig, for the sake of argument, that the demurrers were improperly sustained, the error would be without injury (Beauvoir Club v. State, 148 Ala. 643, 652, 12 South. 1040, 121 Am. St. Rep. 82); but we do not think the demurrers were improperly sustained. The question to be determined is not whether defendant practiced his religion in treating Keeling, but whether defendant practiced medicine, within the meaning of the statute. Assuming that one brings himself within the statute and practices medicine without a certificate of qualification, he is none the less guilty because in so doing he also practiced his religion. The regulation of the practice of medicine is a police regulation for the protection of the public; it does not interfere with the exercise of religious liberty; it merely safeguards the

lives and health of the public against the use and employment of dangerous agencies in the hands of the unlearned and unpracticed in the science and art of medicine. Whether an act is or is not embraced within the act as practicing medicine depends upon the latitude of interpretation of the act. Our statute is extremely broad; its language is: "Any person who treats or offers to treat disease of human beings * * * by any system of treatment whatsoever."

Under this statute, I apprehend, any agency of supposed therapeutic value set in motion with the design to cure, prevent, or alleviate human disease or suffering of body or mind by one who receives a quid pro quo for such service, would be comprehended within its terms; not necessarily that there should be an employment of drugs or surgical or mechanical appliances. Physicians in some cases ascribe a therapeutic value or efficiency to the power of mental suggestion; would the physician, in employing such agency, be any the less practicing his profession? We think not. In those cases, however, where no charge is made for the service, and recourse is had merely to prayer, without the employment of material or human agencies, it cannot be said that the person invoking divine interposition in behalf of another is treating or offering to treat diseases of human beings by any system within the meaning of the statute, and cannot be said to be practicing medicine.

(14) In the instant case, defendant not only employed prayer and the laying on of hands, but, if Keeling's version be accepted, defendant put his ear over Keeling's heart and examined him somewhat in the region of the kidneys and liver, and rubbed him about the affected parts. The sum of $20 was agreed to be paid, of which two $5 payments were made to defendant. These sums defendant testified went to the church or society of which he was president and bishop, receiving compensation as such. This circumstance, however, is immaterial, since, if the offense was committed by defendant, the law would countenance or tolerate no evasion by his receiving compensation by indirection through the medium and device of a corporation. The statute (Code, § 7564), which the ordinance adopts in toto, is very broad and comprehensive, and doubtless was reformed and remodeled to meet the comprehensive and elastic definition of what constitutes the practice of medicine, as set forth in *Bragg's Case*, 134 Ala. 165, 32 South. 767, 58 L. R. A. 925. A case somewhat

[Fealy v. City of Birmingham.]

analogous to the instant case is *Smith's Appeal* (decided by this court) 8 Ala. App. 352, 63 South. 28, wherein it was said inter alia that the accused could not be held guiltless if he charged a fee or received compensation for the service performed.

(15) There was no error in excluding the certificate of incor-corporation and by-laws of the Altruian Church for, as said above, if a defendant is guilty of practicing medicine (within the statute) he is none the less guilty because he also practices his religion. Likewise, and for the same reason, assignments 34, 35, and 36, relative to the tenets and practices of the Altruian Society, or religion, were without merit.

(16) The charges set out in the bill of exceptions are not numbered. The thirty-eighth assignment of error, relating to charge appearing on page 44 of transcript, shows an elliptical charge. This charge was taken from *Gainey's Case*, 141 Ala. 72, 37 South. 355, but omitted a word in copying. If the hiatus had been supplied with the verb "is" or "be," the charge would have announced a correct principle of law, and its refusal would have been reversible error; but the mandate of the statute is that charges be given or refused in the terms in which they are written, and the trial court is without power or authority to supply words to complete the sense of a charge or speculate on what was intended. When the omission is apparent, this may appear hypercritical and dealing in artificial refinements; but our decisions have repeatedly sustained trial courts in refusing such charges.—*Thomas v. State*, 124 Ala. 48, 57, 27 South. 315; *McWhorter v. Blutenthal & Bickert*, 136 Ala. 568, 572, 33 South. 552, 96 Am. St. Rep. 43; *Louisville & Nashville R. R. Co. v. Lile*, 154 Ala. 556, 564, 45 South. 699; *Rogers v. State*, 117 Ala. 9, 15, 22 South. 666.

(17, 18) In the thirty-ninth assignment of error (page 44, transcript), the charge requested was adopted from *Carwile's Case*, 148 Ala. 576, 39 South. 220, being charge 8 therein, which the court held good. In the instant case, the verbiage is slightly changed, but preserves substantially the same meaning as in said charge 8. Charge 8 has also been confirmed in *Gaston's Case*, 161 Ala. 37, 49 South. 876, being charge 21 therein. Under these authorities, this requested charge should have been given. While in our opinion this charge may be open to objection, criticism has been foreclosed by the fact of its approval by the Supreme Court.

[Culliver v. The State.]

(19) The written request to charge embraced in the forty-third assignment (page 45, transcript), asserts a correct principle of law; hypercriticism would, however, lay the charge open to condemnation on account of the way it is couched. It was taken from a statement of the court in *Nordan's Case,* 143 Ala. 11, 27, 39 South. 406, which was made arguendo.

(20) The written request to charge (page 45, transcript), embraced in the forty-fourth assignment, is vicious, in that it singles out and unduly emphasizes a particular phase of the testimony, and is otherwise faulty.

(21) The charge requested in assignment 45 (page 46, transcript) is subject to the vice that it submits to the jury what constitutes practicing a system of medicine within the purview of the statute—in other words, leaves to the jury a question of law.

The charge requested in assignment 46 (transcript, p. 46) is open to the same criticism passed on assignment 45.

(22) The charge requested in assignment 47 (transcript, p. 46) hypothesizes an acquittal upon the belief of the jury that defendant, in treating Keeling, was practicing his religion as taught by the Altruian Church, or society, pretermitting all question as to whether he performed such acts of treatment of human diseases as were denounced and interdicted by the statute.

For the error pointed out in the charge above, a judgment will be entered reversing the judgment and remanding the cause for another trial.

Reversed and remanded.